# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAX GUARDIAN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1214-D |
| | ) | |
| TAXSTATUS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant TaxStatus Inc.'s Motion to Dismiss and Supporting Memorandum of Law [Doc. No. 3]. Plaintiff Tax Guardian, LLC filed a response [Doc. No. 8], and TaxStatus replied [Doc. No. 9]. The matter is fully briefed and at issue.

## BACKGROUND

As alleged in Tax Guardian's Amended Petition [Doc. No. 1-2], Tax Guardian is an Oklahoma entity that owns a patented software tool for Internal Revenue Service (IRS) transcript data interpretation and monitoring, known as the Tax Guardian Software Solution (TGSS). *Id.* at ¶ 6. Tax Guardian contracted with non-party Innovation Refunds, LLC to provide monitoring services via TGSS. *Id.* Tax Guardian leased from TaxStatus an application program interface (API) connection to the IRS "to pull taxpayer IRS transcript data from the IRS to TGSS via custom APIs" while Tax Guardian was awaiting its own API from the IRS. *Id.*

On August 1, 2023, Tax Guardian and TaxStatus entered into a Purchase Order "under which Tax Guardian would be granted full access to TaxStatus's software as a

service ('SaaS') platform[.]" *Id.* at ¶ 7. In May 2025, TaxStatus notified Tax Guardian that it intended to terminate the Purchase Order on or about July 31, 2025. *Id.* at ¶ 19.

Tax Guardian alleges that "[u]pon information and belief, prior to and during this time, TaxStatus individually negotiated and contracted with at least one of Tax Guardian's clients, Innovation Refunds, to provide IRS transcript data interpretations and monitoring services using TaxStatus's SaaS platform directly." *Id.* at ¶ 20. Further, "[u]pon information and belief, TaxStatus is processing the data of individual tax clients using the consent forms it obtained from its prior relationship with Tax Guardian, in breach of the Purchase Order and Terms of Service." *Id.* at ¶ 22. Tax Guardian additionally alleges that TaxStatus has failed to revoke any of these Form 8821s (Tax Information Authorization forms) "in its possession from its relationship with Tax Guardian." *Id.* at ¶ 23.

Tax Guardian expressly disclaims bringing a breach of contract claim under the Purchase Order. Rather, Tax Guardian initiated claims against TaxStatus for 1) tortious interference with the Purchase Order between TaxStatus and Tax Guardian; and 2) tortious interference with Tax Guardian's business and contractual relationship with Innovation Refunds.

STANDARD OF DECISION

TaxStatus moves to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that the Court lacks personal jurisdiction over TaxStatus. Tax Guardian "bears the burden of establishing personal jurisdiction over defendant." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). Where,

as here, the issue is presented for decision on the basis of allegations and affidavits or written materials, Tax Guardian "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation and citation omitted).

At this stage, the Court must accept "'as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint'" and "resolve any factual disputes in the plaintiff's favor." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)). However, "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit." *Shrader*, 633 F.3d at 1248. When a moving defendant submits an affidavit based on personal knowledge, the plaintiff must show a dispute of fact "through specific averments, verified allegations, or other evidence" such as affidavits or other written materials. *Shrader*, 633 F.3d at 1248; *Dental Dynamics*, 946 F.3d at 1228.

"To show personal jurisdiction over a nonresident in a diversity action, [the plaintiff] must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Dental Dynamics*, 946 F.3d at 1228. Under Oklahoma law, the personal jurisdiction inquiry is simply the due process analysis. *Id.* at 1229. The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

## DISCUSSION

### I.    Minimum Contacts

The minimum contacts standard may be satisfied by showing general or specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 261-62 (2017). General jurisdiction refers to a court's power to hear claims against a nonresident defendant whose "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919).

Tax Guardian relies solely on specific jurisdiction in this case. Specific jurisdiction requires that "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Daimler*, 571 U.S. at 127) (emphasis added in *Bristol-Myers*). Specific jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities.'" *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472).

Purposeful direction can be satisfied by showing a defendant's "continuing relationships with forum state residents," "deliberate exploitation of the forum state market," or "harmful effects in the forum state." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). Regarding continuing relationships, TaxStatus asserts that "[t]he only alleged 'contact' TaxStatus had with Oklahoma was entering into a one-year Purchase Order with an Oklahoma-based LLC that was

4

subsequently renewed for an additional one-year term." [Doc. No. 3, at 15]. TaxStatus also contends that it has not deliberately exploited Oklahoma since it does not direct any marketing toward Oklahoma and its operation of a cloud-based SaaS solution is based in Virginia. Tax Guardian failed to respond to TaxStatus's arguments regarding continuing relationships and market exploitation, appearing to rely solely on harmful effects in the forum state.

Tax Guardian asserts that TaxStatus has sufficient minimum contacts with Oklahoma based on the tort-based harmful effects test provided in *Calder v. Jones*, 465 U.S. 783 (1984). The Tenth Circuit has held that in a tort case "'purposeful direction' has three elements: (a) an intentional action … that was (b) expressly aimed at the forum state … with (c) knowledge that the brunt of the injury would be felt in the forum state." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (citation omitted). The Tenth Circuit "has followed the Supreme Court in requiring a particular focus by the defendant on the forum State to satisfy the purposeful-direction requirement." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 843 (10th Cir. 2020). "In addition, a plaintiff's injuries must 'arise out of [the] defendant's forum-related activities.'" *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (citation omitted).

In its motion to dismiss, TaxStatus asserts that Tax Guardian has not met its burden to establish TaxStatus's minimum contacts with Oklahoma for purposes of specific jurisdiction. TaxStatus contends that its only connection with Oklahoma is that Tax Guardian—TaxStatus's former customer—maintains its headquarters in Oklahoma. With respect to this connection, TaxStatus adds that "[i]t was [Tax Guardian] that sought

5

TaxStatus's services." [Doc. No. 3, at 6]. Importantly, TaxStatus has provided a Declaration of Eric Thorson in Support of its Motion to Dismiss [Doc. No. 3-2], which includes the following statements by Mr. Thorson, the Head of Enterprise Relationships for TaxStatus:

- TaxStatus is incorporated under the laws of the State of Delaware and maintains its headquarters in Frisco, Texas;

- TaxStatus provides a cloud-based Software as a Service (SaaS) solution that streamlines access to taxpayer information held by the IRS;

- Publicly available information reflects that the IRS is headquartered in Washington, D.C. and maintains taxpayer data through the IRS Master File, which is housed in West Virginia;

- TaxStatus's SaaS solution is hosted by data centers located in Virginia;

- TaxStatus has no physical operations or employees in Oklahoma;

- TaxStatus is not registered to do business in Oklahoma;

- TaxStatus does not target marketing to Oklahoma residents;

- TaxStatus's only customer residing in Oklahoma is Tax Guardian, TaxStatus's former customer;

- Tax Guardian made first contact with TaxStatus and sought TaxStatus's services;

- The Purchase Order is governed by Delaware law; and

6

- TaxStatus only communicated with Tax Guardian telephonically or via e-mail, and TaxStatus employees have never visited Tax Guardian in Oklahoma.

[Doc. No. 3-2, at ¶¶ 3-13, 19-20].

Based on the foregoing, TaxStatus contends that Tax Guardian has failed to show that it purposefully directed its activities at Oklahoma and that Tax Guardian's injuries arise out of those forum-related activities.

In response, Tax Guardian emphasizes that its claims against TaxStatus "do not arise from the breach of their contract" but are limited to tort claims for TaxStatus's alleged tortious interference with Tax Guardian's contracts with Innovation Refunds and TaxStatus. [Doc. No. 8, at 9]. In arguing purposeful direction, however, Tax Guardian focuses on "two intentional acts of note." *Id.* at 18. First, Tax Guardian argues that TaxStatus "terminated its Purchase Order in violation of its Terms of Service with Tax Guardian, and refused to revoke IRS Form 8821s it made with Tax Guardian, an Oklahoma company, for, at a minimum, 16,408 clients it monitored, including 209 Oklahoma taxpayers." *Id.* However, Tax Guardian *expressly disclaims* bringing a breach of contract claim against TaxStatus, and Tax Guardian fails to explain how TaxStatus's purported refusal to revoke IRS Form 8821s was "expressly aimed at the forum state" with "knowledge that the brunt of the injury would be felt in the forum state." *See Niemi*, 770 F.3d at 1348. Tax Guardian's argument that "[e]ach of these 16,617 taxpayer encounters is an individual contact by TaxStatus with the State of Oklahoma" falls short when only 1% of the taxpayers allegedly affected by TaxStatus's refusal to revoke the Form 8821s are Oklahoma residents.

Next, Tax Guardian contends that minimum contacts are met based on TaxStatus's intentional act of sending Tax Guardian a cease-and-desist letter to Oklahoma "with the express intent of harming Tax Guardian's interests in its customers' tax information." [Doc. No. 8, at 10, 18]. For support, Tax Guardian cites to *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063 (10th Cir. 2008). In *Dudnikov*, the plaintiffs ran a small eBay site from their home in Colorado. *Dudnikov*, 514 F.3d at 1068. The plaintiffs auctioned certain fabric depicting images of Betty Boop, for which Chalk & Vermilion Fine Arts, Inc. owned the copyrights. *Id*. Utilizing eBay's "verified rights owner" (VeRO) program, Chalk & Vermilion "filed a [Notice of Claimed Infringement (NOCI)] with eBay contesting [the] plaintiffs' sale of the Betty Boop fabric," with knowledge that "[u]nder this program, eBay [would] automatically terminate an ongoing auction when it receive[d] a [NOCI] from a VeRO member[.]" *Id.* at 1069. The plaintiffs also exchanged e-mails with Chalk & Vermilion wherein the latter threatened legal action related to the alleged copyright infringement. *Id*. In *Dudnikov*, the Tenth Circuit found that Chalk & Vermilion had minimum contacts with the State of Colorado because Chalk & Vermilion sent the NOCI "with the ultimate purpose of cancelling plaintiffs' auction in Colorado." *Id.* at 1075.

Here, as TaxStatus points out, Tax Guardian has not provided any legal authority supporting its argument that TaxStatus established minimum contacts with Oklahoma by merely sending Tax Guardian a cease-and-desist letter. Unlike the NOCI in *Dudnikov*, Tax Guardian has not sufficiently alleged that the purpose of the cease-and-desist letter was to harm Tax Guardian's business, nor has Tax Guardian alleged that its injuries stem from the cease-and-desist letter. Upon review of the cease-and-desist letter, TaxStatus merely

8

explained its view that Tax Guardian's "threats against TaxStatus are meritless," and that it is a "taxpayer's sole right and option to revoke a previously filed IRS Form 8821." [Doc. No. 8-2, at 1-2]. TaxStatus further requested that Tax Guardian "cease and desist all attempts at causing TaxStatus to revoke the IRS Form 8821s at issue and that Tax Guardian direct all further communication regarding this matter to [TaxStatus's counsel]." *Id.* Clearly, this case is distinguishable from *Dudnikov*, wherein the defendant sent a NOCI to eBay with knowledge that it would automatically cancel the plaintiffs' Colorado-based auction.

Ultimately, the Court finds that Tax Guardian has not made a prima facie showing that TaxStatus aimed an intentional action at Oklahoma with knowledge that the brunt of the injury would be felt in Oklahoma. Notably, although Tax Guardian vaguely refers to TaxStatus's alleged "interference with Tax Guardian's existing contract with Innovation Refunds," Tax Guardian has made no attempt to allege where the actions giving rise to its tortious interference claim occurred or where Tax Guardian's contract with Innovation Refunds was based. Rather, Tax Guardian's CEO's Affidavit [Doc. No. 8-1] provides that "16,408 taxpayers still had an active relationship with Innovation Refunds after [Innovation Refunds] ended its relationship with Tax Guardian, including 209 business taxpayers domiciled in Oklahoma." [Doc. No. 8-1, at ¶ 5]. This is insufficient for the Court to find minimum contacts between *TaxStatus* and the State of Oklahoma.

At times, Tax Guardian appears to rely on the parties' Purchase Order to establish TaxStatus's minimum contacts with Oklahoma. Even if this were a breach of contract case, Tax Guardian's contract with TaxStatus alone would not be sufficient to establish minimum

9

contacts. *Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Further, Tax Guardian failed to rebut via affidavit the declarations made by Mr. Thorson of TaxStatus: that *Tax Guardian* solicited TaxStatus's services; that TaxStatus employees never visited Tax Guardian in Oklahoma; and that TaxStatus does not conduct business in Oklahoma.[1]

For these reasons, the Court finds that Tax Guardian has not met its burden to make a prima facie showing of TaxStatus's minimum contacts with Oklahoma.[2]

## II.    Jurisdictional Discovery

In the alternative, Tax Guardian makes a vague request for "the opportunity to conduct discovery on TaxStatus's minimum contacts with Oklahoma." [Doc. No. 8, at 25]. Whether to grant jurisdictional discovery is within the Court's discretion. *Grynberg v.*

---

[1] Tax Guardian appears to assert that Tax Guardian's Purchase Order with TaxStatus is sufficient to establish minimum contacts under the *Calder* effects test because TaxStatus interfered with the parties' Purchase Order and Tax Guardian is an Oklahoma entity. However, both Delaware and Oklahoma law are clear that a plaintiff cannot maintain a tortious interference with contract claim where the defendant is a party to the contract. *See Wilspec Technologies, Inc. v. DunAn Holding Grp., Co., Ltd.*, 2009 OK 12, ¶ 15 (tortious interference claim "is viable only if the interferor is not a party to the contract or business relationship"); *Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 ("A claim for tortious interference, however, may not be maintained by a defendant that is a party to the contract; in other words, 'a party to a contract cannot tortiously interfere with that very same contract.'").

[2] Given this finding, the Court does not address whether exercising personal jurisdiction over TaxStatus would also offend the traditional notions of fair play and substantial justice. *See Old Republic*, 877 F.3d at 910 ("Because we hold that Old Republic has failed to carry its burden to show purposeful direction, we do not reach the 'arising out of' and reasonableness components of the specific jurisdiction analysis."). Further, because the Court grants TaxStatus's Rule 12(b)(2) motion, the Court need not address the alternative grounds for dismissal.

*Ivanhoe Energy, Inc.*, 490 F. App'x 86, 102 (10th Cir. 2012) (citing *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188-89 (10th Cir. 2010)). Here, the Court finds that Tax Guardian is requesting discovery on any aspect of its showing of TaxStatus's minimum contacts that may be lacking. Upon consideration, the Court denies Tax Guardian's alternative request for jurisdictional discovery. *See Magnesium Mach., LLC v. Terves LLC*, No. CIV-21-1115-PRW, 2022 WL 16641839, at *6 (W.D. Okla. Nov. 2, 2022) ("Magnesium has not met its burden to demonstrate that jurisdictional discovery is appropriate because it has failed to specify what it hopes to uncover in discovery.") (internal quotation and citation omitted).

## CONCLUSION

For these reasons, Defendant TaxStatus Inc.'s Motion to Dismiss and Supporting Memorandum of Law [Doc. No. 3] is **GRANTED**. This action is **DISMISSED without prejudice** to re-filing in a proper forum.

**IT IS SO ORDERED** this 2nd  day of June, 2026.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

11